**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Marie Black,

                Plaintiff,

                                          Civ. No. 06-1477 (RHK/RLE)
                                          **MEMORANDUM OPINION**
                                          **AND ORDER**

v.

Independent School District No. 316,

                Defendant.

---

Robert L. Schug, Rachhana T. Srey, Steven Andrew Smith, Nichols Kaster & Anderson, P.L.L.P., Minneapolis, Minnesota, Katherine C. Bischoff, Jackson Lewis, L.L.P., Minneapolis, Minnesota, for Plaintiff.

James E. Knutson, Carla Jo White, Knutson Flynn & Deans, P.A., Mendota Heights, Minnesota, for Defendant.

---

**INTRODUCTION**

In this action, Plaintiff Marie Black has sued her former employer, Independent School District No. 316 (the "District"), claiming that she was retaliated against for challenging the District's pay scale. The District now moves for partial summary judgment[1]

---

[1] The District moves for summary judgment with respect to Counts One and Two of the Complaint, alleging claims of retaliation under Title VII and the Minnesota Human Rights Act. (See Mem. in Supp. at 13; Am. Compl. ¶¶ 30-38.) It has not moved for summary judgment on Counts Three or Four, alleging gender discrimination in violation of the MHRA and Title VII, respectively. (See Am. Compl. ¶¶ 39-47.)

and argues that Black has not established a case of retaliation. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND[2]

The instant case is the result of a five-year dispute between Black and the District concerning pay equity between male and female employees. Black asserts that the District retaliated against her because of certain actions she took during the pendency of that dispute.

### I.     Black's Challenge to the District's Pay Scale

On November 26, 2001, Black began working for the District as an accounting clerk. (Black Dep. Tr. at 47.) Shortly after she was hired, she became suspicious that positions within the District dominated by female employees, including her own, were paid less than comparable positions dominated by male employees. (Id. at 231-32.) To address this apparent disparity, she sent a letter on September 27, 2002 to Bill Makinen, Superintendent of the District, and to Roy Trousdell, Business Manager of the District. (Schug Aff. Ex. 3.) She requested that the Comparable Worth/Job Evaluation Committee

---

[2] The material facts of the instant case are hotly disputed by the parties. Specifically, the District has argued that many of the facts asserted by Black in her deposition are false, and it filed several affidavits with its Reply Brief in an attempt to discredit her deposition testimony. Black argues that the submission of these affidavits violates Local Rule 7.1(b) and has moved to strike them. While the affidavits should have been submitted with the District's moving brief, the Court must view all factual disputes at the summary-judgment stage in Black's favor. Accordingly, the Court's consideration of the affidavits will not change its analysis of the instant Motion and it will deny Black's Motion to Strike.

(the "Committee")[3] review the District's pay scale to determine whether the accounting clerks' allotment of 151 pay points was sufficient given their responsibilities and whether the pay scale equally compensated male-dominated and female-dominated positions. (Schug Aff. Exs. 3, 4; Mem. in Opp'n at 3.) In response, Trousdell expressed his opinion that the Committee would not likely support a pay-point increase for the accounting clerks. (Schug Aff. Ex. 4.) He indicated, however, that the District's management "might" support a pay-point increase and recommended that the accounting clerks submit a formal request for both a pay-point and pay-rate increase. (Id.)

Black did not file a formal request following Trousdell's recommendation; in November 2002 she did complete grievance forms for her union, AFSCME, in which she reasserted her previous allegations of pay disparity and further asserted that the District had not adequately evaluated her request to review pay equity. (Schug Aff. Ex. 5.) On February 3, 2003, Black met with Makinen and several other union and school board members to discuss her grievance. (Black Dep. Tr. at 235.) Black asserts that during this meeting Makinen told her that she "had no right" to make her allegations of pay disparity, that they were "a slap in the face to [him]," and that "if [she thought] that [she had] been discriminated against, [she could] file a lawsuit." (Id.)

---

[3] The Committee was responsible for evaluating certain positions within the District and assigning each with a pay-point value. (First Thompson Aff. Ex. A at 14.) While the parties' briefs do not make clear the significance of a specific position's pay-point value, a District employee was not eligible to receive a pay increase unless the pay points allocated to her position had first been increased. (Trousdell Dep. Tr. at 62-63.)

The District did not act on Black's pay disparity claims and on April 7, 2003, AFSCME initiated a class-action grievance on behalf of Black and other employees alleging that the District had ignored her claims. (Schug Aff. Ex. 6.) Shortly thereafter, the Committee met to evaluate the accounting clerks' pay-point allotment and determined to leave it at its then-existing level of 151. (Schug Aff. Ex. 7; First Thompson Aff. ¶ 6, Ex. B.)

## II.   Black's Charges of Discrimination

Following the Committee's decision, Black filed charges of discrimination with the Minnesota Department of Human Rights ("MDHR") and with the EEOC alleging that the District had discriminated against its female employees. (Schug Aff. Ex. 8; First Thompson Aff. ¶ 7, Exs. C, D.) She also appealed the Committee's decision to the Minnesota Department of Employee Relations ("DOER"). (Schug Aff. Ex. 9 at 2.) On February 18, 2004, the DOER completed its review of Black's appeal and recommended that the District increase the accounting clerks' pay-point level to 169; the Committee implemented this recommendation the following August and increased the accounting clerks' pay by 80 cents per hour. (Id. at 1.) In a similar ruling in June 2004, the MDHR found probable cause that the District had engaged in an unfair discriminatory practice and referred the matter to the Minnesota Office of the Attorney General for conciliation pursuant to Minnesota Rule 5000.0800 (2005). (Schug Aff. Exs. 10, 11.)

On July 1, 2004, following these decisions by the DOER and the MDHR, Makinen was replaced as Superintendent by Dr. Rod K. Thompson. (First Thompson Aff. ¶ 1.) Black asserts that, shortly after he became Superintendent, Thompson referred to union members

as "dogs," treated Black as an "outcast," and made "threatening" comments to her, including a directive that she not speak with the press about an unrelated incident affecting the District, "or else." (Black Dep. Tr. at 66, 72.)

On January 5, 2005, the District proposed terms for a new collective bargaining agreement (the "CBA") with AFSCME[4] that excluded the participants in AFSCME's class-action grievance (including Black) from certain protections afforded other union members. (Schug Aff. Ex. 19; Black Dep. Tr. at 79.) On January 16, 2005, Black faxed a letter to the Attorney General's office and expressed her concern that she (and others) had been excluded from these protections in retaliation for participating in the grievance. (Schug Aff. Ex. 19.) The Attorney General's office then contacted the District, which in turn modified the proposal to provide these protections to all AFSCME members, including the participants in the grievance. (Black Dep. Tr. at 81.)

## III. Black's Transfer to a New Position

In November 2005, the District discovered that it was running a substantial operating deficit. (First Thompson Aff. ¶ 14, Ex. K.). In order to erase this deficit, in January 2006, the Minnesota Department of Education directed the District to immediately reduce its personnel. (First Thompson Aff. ¶ 14, Ex. K); see also Minn. Stat. § 123B.83. To comply with this directive, the District selected thirty positions for elimination, including one

---

[4] The District and AFSCME had been negotiating the terms of a new CBA since July 1, 2003, when their previous CBA had expired. (Black Dep. Tr. at 74-75.) A new CBA was executed on March 30, 2005. (Id. at 75.)

accounting clerk; because Black had the least seniority of the accounting clerks, her position was eliminated. (See First Thompson Aff. ¶ 16, Ex. M; Mem. in Supp. at 4.)

In February 2006, Black was informed that her position was being eliminated and that, because of her seniority rights, she could accept one of several positions staffed by other less-senior employees. (First Thompson Aff. ¶ 17; Black Dep. Tr. at 110-11.) She asserts that she did not choose which position to accept. (Black Dep. Tr. at 209-11.) Instead, on February 9, 2006, the District sent a letter to her that stated that "[e]ffective Monday, February 13, 2006 . . . [her] employment status will change" and listed a new position for Black.[5] (First Thompson Aff. Ex. N.)

Black started working in her new position on February 13, 2005; in that position, she worked fewer hours and received a lower pay rate than at her previous position. (Id. at 211-12; First Thompson Aff. Ex. N.) Finding these conditions unacceptable, she left her employment on March 15, 2006. (Black Dep. Tr. at 9; First Thompson Aff. ¶ 22, Ex. Q.) On April 18, 2006, she filed the instant action against the District, alleging claims of retaliation and gender discrimination under state and federal law. The District now moves for summary judgment with respect to Black's retaliation claims.

---

[5] The District disputes Black's characterization of events and asserts that she did choose which position to accept and that its February 9, 2006 letter simply confirmed her change in position. (Mem. in Supp. at 5; First Thompson Aff. ¶ 18.) As discussed below, for purposes of Summary Judgment, the Court will assume Black's version of events as true.

**STANDARD OF DECISION**

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the non-moving party. See Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The non-moving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

Both Title VII and the MHRA prohibit an employer from retaliating against an employee who has opposed discriminatory practices in the workplace. 42 U.S.C. § 2000e-3(a); Minn. Stat. § 363A.15. Because Black has presented no direct evidence of retaliation, the McDonnell Douglas burden-shifting analysis governs the order and analysis of proof for her claims. Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005).

Under this analysis, the plaintiff bears the initial burden of establishing a *prima-facie* case of retaliation. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). After the plaintiff has met this burden, the defendant must then articulate a legitimate, nondiscriminatory reason for its action. Id. Finally, the burden shifts back to the plaintiff to establish that the defendant's proffered nondiscriminatory reason was pretext. Id. at 804.

The District argues that Black has not made out a *prima-facie* case of retaliation for engaging in protected activities.[6] To do so, Black must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between her protected activity and the adverse employment action. Robinson v. Potter, 453 F.3d 990, 994 (8th Cir. 2006) (citation omitted). Black points to multiple events in which she claims to have engaged in protected activities. (See Mem. in Opp'n at 14.) While the District disputes whether some of Black's proffered activities were, in fact, "protected," it concedes that she engaged in protected activities on two occasions – when she requested that the Committee evaluate her perceived pay disparity between men and women and when she filed her charge of discrimination against the District. (Reply Mem. at 10-11.) Because of this concession by the District, the Court will move on to consider the two remaining prongs of her *prima-facie* case.

---

[6] The District also argues that Black has not established that its nondiscriminatory reasons for the challenged employment actions were pretextual. However, because this argument was raised for the first time in the District's Reply Brief, the Court will not address it. See Sias v. Herzog, Civ. No. 04-3832, 2006 WL 2418950, at *4 n.3 (D. Minn. Aug. 21, 2006).

**I.      Adverse Employment Actions**

For Black to establish that she suffered "adverse employment actions," she "must show that a reasonable employee would have found the challenged actions materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, __ U.S. __, 126 S. Ct. 2405, 2415 (2006). In other words, the District's conduct must be sufficiently severe that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (internal quotations omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners" will not dissuade a reasonable person from pursuing a claim of retaliation.[7]  Id.

Black points to eight events that she claims constitute adverse employment actions: (1) Trousdell's e-mail expressing doubt that the Committee would support her request for a raise; (2) Makinen's statements that her accusations of pay disparity were "a slap in the face" to him and that she "had no right" to make them; (3) Thompson's references to union members as "dogs," his treatment of her as an "outcast," and his alleged "threats" toward her; (4) Thompson's threat that Black not speak to the press, "or else"; (5) the District's proposed CBA terms excluding her and others from certain protections; (6) the District's failure to suppress alleged harassment by her co-workers regarding her union involvement;

---

[7] Black does not argue that the standards for establishing a claim of retaliation under the MHRA and Title VII differ in any respect. Specifically, she does not claim that the standards under the MHRA are *more favorable* to her case than those recently announced in White. Accordingly, the Court's analysis of her Title VII retaliation claim under White also applies to her MHRA claim of retaliation.

(7) a lack of overtime opportunities provided to her; and (8) her reassignment to a position with fewer hours and lower pay. (Mem. in Opp'n at 16-18.)

### A. Five of the Employment Actions Black Challenges are not "Adverse."

At the outset, the Court determines that no reasonable fact-finder could conclude that five of the challenged actions constitute "adverse" employment actions.

First, Trousdell's e-mail stating that the Committee would not support a pay increase for the accounting clerks included a statement that the District's management might be supportive of such an increase, and further recommended that the accounting clerks file a formal request for a pay increase. (Schug Aff. Ex. 4.) A reasonable person reading Trousdell's e-mail, therefore, would not have been dissuaded from pursuing a pay-equity complaint; rather, she would have been *encouraged* to do so.

Second, Black has not established that she suffered an adverse employment action when Thompson allegedly referred to union members as "dogs," treated her as an "outcast," and "threatened" her. First, in the Court's view, Thompson's reference to union members as "dogs," is nothing more than a petty slight that would not have dissuaded a reasonable person in her position from pursuing a claim of discrimination. Second, Black has not alleged specific facts supporting her allegations that Thompson treated her as an "outcast" or "threatened" her. Instead, she simply states that "[Thompson's] comments to [her] were very threatening" and that she "got threatening messages from him," without providing the

10

specific statements or messages that Thompson allegedly made or sent.[8] (Black Dep. Tr. at 72.) The Court is unable to determine from these comments whether a reasonable person would have found Thompson's statements "threatening" or if Black was treated as an "outcast" as she claims. Accordingly, Black has not fulfilled her burden of establishing that Thompson's treatment of her constituted an adverse employment action. See Gallo v. Herman, No. 97-CV-8359, 1999 WL 249709, at *3 (S.D.N.Y. Apr. 28, 1999) (plaintiff's allegation of derision by co-workers was insufficient to establish an adverse employment action in the absence of specific facts showing the nature of the derision and how it rose to the level of a material adverse action.)

Third, Black has not alleged specific facts from which the Court could conclude that she suffered an adverse employment action from the District's failure to stop alleged harassment by her co-workers. Indeed, she merely states that "[a]fter [she] testified at the arbitration hearing, the other accounting clerks began harassing [her]," without otherwise identifying what actions were taken against her, when these actions were taken, or how often they were taken. (Black Decl. at ¶ 3.) Her assertions, therefore, leave the Court to speculate regarding the severity of her alleged "harassment" to determine whether the District's failure to stop her co-workers' conduct created a materially adverse work environment. In other words, without specific facts to support Black's allegation that she

---

[8] Black also alleges that, following the resignation of one of her supervisors, Thompson told her not to speak to the press "or else." The Court notes that this allegation, which will be discussed below, is sufficient for purposes of summary judgment to establish that Black suffered an adverse employment action.

11

was "harassed," the Court has no basis to conclude that the incidents to which she refers were not simply petty slights or minor annoyances. Accordingly, Black's allegation that the District failed to stop the co-worker "harassment" is insufficient to establish that she suffered an adverse employment action.

Fourth, Makinen's statements that Black's allegations were a "slap in the face" to him and that she "had no right" to make them were simply Makinen's expression that he felt insulted by Black's allegations. Furthermore, Makinen explicitly stated that Black could "file a lawsuit" if she believed that the District had discriminated against her. These statements would not dissuade a reasonable person in Black's position from pursuing her claims of discrimination against the District.

Finally, Black has not established that she suffered an adverse employment action when the District proposed terms of the CBA that left her without certain union protections. To establish an adverse employment action, a plaintiff must do more than allege that actions taken by her employer created the potential for harm; rather, she must show some tangible harm flowing from the employer's actions. See Burchett v. Target Corp., 340 F.3d 510, 518 (8th Cir. 2003) (negative performance review not adverse employment action when employer did not rely upon review in altering terms of employment); Jones v. Fitzgerald, 285 F.3d 705, 714 (8th Cir. 2002) (placing negative memorandum in employee's personnel file was not adverse employment action when employer did not review memorandum before disciplining employee). In the instant case, Black has admitted that the language excluding her from certain union protections was

removed from the District's proposal and that she was provided with all of the protections afforded to other union members when the CBA was finalized and implemented. (Mem. in Opp'n at 8.) Accordingly, she was not adversely affected by the District's proposed terms to the CBA.

### B. Black has Sufficiently Alleged Three Adverse Employment Actions.

Although five of the events that Black relies upon do not constitute adverse employment actions, the Court determines that a reasonable fact-finder could conclude that three events alleged by Black do constitute adverse employment actions: (1) Thompson's threat that Black was not to speak with the press "or else," (2) Black's lack of overtime opportunities, and (3) Black's reassignment to a position with lower pay and fewer hours.

With respect to Thompson's statement that Black not speak with the press "or else," the District argues that (1) Thompson did not, in fact, make this statement and (2) even if he did, it is a "minor annoyance" that does not rise to the level of an adverse employment action. (Reply Mem. at 6.) Each argument fails. First, the District's assertion that Thompson did not make this statement directly contradicts Black's assertion that he did, creating a material issue of fact that the Court is unable to resolve at the summary-judgment stage. Second, assuming (as the Court must) that Thompson made the statement, the Court concludes that it is more than a "minor annoyance." Indeed, Thompson was Black's supervisor and his alleged comment, while vague, could suggest the possibility of termination to a reasonable person in Black's position. Accordingly, Thompson's alleged

13

statement to Black that she not speak to the press "or else" is sufficient, under these circumstances, to constitute an adverse employment action.

With respect to Black's lack of overtime and reassignment, the District concedes that it did not provide Black with overtime opportunities to the same extent as her co-workers and that she was paid less in her new position. (Reply Mem. at 8-9.) It argues, however, that it had valid reasons for providing her with fewer overtime opportunities than her co-workers and that Black herself selected the new position to which she was transferred. (Id. at 9-10.) These arguments, however, speak only to the District's purported motivations for its actions, not whether those actions are adverse. And, there can be little doubt that Black's lack of overtime and transfer are adverse employment actions, because a reasonable person, threatened with either of these actions that lower overall compensation, would be dissuaded from pursuing a claim of discrimination.

Accordingly, Black has provided sufficient evidence from which a reasonable fact-finder could conclude that she suffered adverse employment actions when she was allegedly (1) threatened by Thompson not to speak to the press about her supervisor's resignation "or else," (2) provided fewer overtime opportunities than her colleagues, and (3) reassigned to a position with lower pay and fewer hours.

**II.    Causation**

Although Black has established the first two prongs of a *prima-facie* case of retaliation, she is unable to satisfy the third prong, causation.

Initially, with respect to Black's alleged reassignment, the Court notes that Black does not dispute that her position was eliminated because of the District's budgetary restrictions and her low seniority and that she was provided with the opportunity to accept a different position at the expense of a co-employee. (See Black Dep. Tr. 109-11.) Nonetheless, she asserts that each of the adverse employment actions that she suffered, including her reassignment, was caused by her protected conduct. In support of this assertion, she points to each of the incidents that she has alleged as adverse employment actions and argues that, if "taken as a whole," they provide a sufficient showing of a causal connection to her protected conduct. (Mem. in Opp'n at 19.) This argument is a non-starter; the fact that adverse employment actions occurred does not explain *why* those actions occurred. In other words, the fact that Black was threatened by Thompson and received lower pay and less overtime provides no evidence upon which a reasonable jury could determine that she suffered these actions *because* she engaged in protected activities.[9]

---

[9] Black also argues that she has established the required causal link between her protected activities and each of the adverse employment actions that she alleges because Makinen "admitted his discriminatory motivations" when he told her that she "had no right" to accuse the District of discrimination and that it was a "slap in the face" to him that she did so. (Mem. in Opp'n at 19.) Black's argument fails, however, because her allegations do not show how Makinen is related to the adverse employment actions that she suffered, each of which allegedly occurred after Thompson had replaced him as the District's Superintendent. Black has presented no evidence explaining why Makinen's alleged animus should be imputed to Thompson. Accordingly, comments that Makinen made while he was Superintendent fail to provide a causal connection to the adverse employment actions alleged by Black during a period in which Thompson was the Superintendent.

Accordingly, the Court concludes that Black has failed to sufficiently offer facts to prove a causal connection between her protected activities and the adverse employment actions that she alleges.

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, it is **ORDERED** that:

I.  Independent School District No. 316's Motion for Partial Summary Judgment (Doc. No. 28) is **GRANTED**;

II.  Counts One and Two of Marie Black's Amended Complaint (Doc. No. 2) are **DISMISSED WITH PREJUDICE**; and

III.  Black's Motion to Strike the affidavits submitted with the District's Reply Brief (Doc. No. 45) is **DENIED**.

Dated: March 12, 2007

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge